UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASHIR RIVERA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMUNICATION SYSTEMS, INC., ROGER H.D. LACEY, ANITA KUMAR, STEVEN C. WEBSTER, RANDALL D. SAMPSON, RICHARD A. PRIMUTH, and MICHAEL ZAPATA,<br><br>　　　　Defendants. | Case No.:<br><br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

　　　　Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

　　　　1.　　This action concerns a proposed transaction ("Proposed Transaction") announced on April 29, 2021, pursuant to which Communication Systems, Inc., ("Communication Systems" or the "Company") will sell its Transition Networks and Net2Edge businesses (the "Businesses") to Lantronix, Inc. ("Lantronix").

　　　　2.　　On April 28, 2021, Communication Systems' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a securities purchase agreement (the "Purchase Agreement"). Pursuant to the terms of the Purchase Agreement, Communications System shall receive 25.0 million, subject to customary working capital adjustments following closing and an earn out of up to $7.0 million, based on revenue milestones (the "Purchase

Consideration").

3. On June 15, 2021, in order to convince Communication Systems' Shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, a special meeting of Communication Systems' stockholders will be held to vote on regarding the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Communication Systems' stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the transaction.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Communication Systems shareholder.

10. Defendant Communication Systems is a Delaware corporation and a party to the Purchase Agreement. Communication Systems shares are traded on the NASDAQ under the ticker symbol "JCS."

11. Defendant Roger H.D. Lacey is Chairman of the Board and a director of the Company.

12. Defendant Anita Kumar is the Company's Chief Executive Officer and a director of the Company.

13. Defendant Steven C. Webster is a director of the Company.

14. Defendant Randall D. Sampson is a director of the Company.

15. Defendant Richard A. Primuth is a director of the Company.

16. Defendant Michael Zapata is a director of Company.

**FACTS**

17. Communication Systems is a Minnesota corporation that was organized in 1969. Communication systems develops and sells Intelligent Edge solutions that provide connectivity and power through Power over Ethernet ("PoE") products and actionable intelligence to end devices in an Internet of Things ("IoT") ecosystem through embedded and cloud-based management software and provides SD-WAN and other technology solutions that address prevalent IT challenges, including network resiliency, security products and services, network virtualization, and cloud migrations, IT managed services, wired and wireless network design and implementation, and converged infrastructure configuration, deployment and management.

18. Lantronix is a global provider of Software as a Service (SaaS), connectivity services, engineering services, intelligent hardware solutions for the Internet of Things (IoT) and Remote Environment Management (REM).

19. On April 28, 2021, Communication Systems' Board caused the Company to enter into the Purchase Agreement.

20. According to the press release announcing the Proposed Transaction:

***

**Minnetonka, MN – April 29, 2021 -- Communications Systems, Inc. (NASDAQ: JCS)** ("CSI" or the "Company"), an IoT intelligent edge products and services company, today announced that it entered into a definitive securities purchase agreement ("Purchase Agreement") with Lantronix, Inc. (Nasdaq: LTRX) ("Lantronix"), to sell the Company's Transition Networks and Net2Edge businesses to Lantronix for a base price of $25.0 million to be paid at closing, subject to a working capital adjustment following the closing, plus up to an additional $7.0 million in earnout payments based on revenue milestones for the Transition Networks and Net2Edge businesses in the two 180-day periods after closing of the sale.

The sale of these businesses requires CSI shareholder approval and is also subject to customary closing conditions. Assuming CSI's shareholders approve the

transaction, it is expected to close in June 2021. The Transition Networks and Net2Edge businesses represent substantially all of the assets of the Company's Electronics & Software segment, which had 2020 revenues of $34.5 million.

\*\*\*

**Additional Legacy CSI Assets**

In addition to its Transition Networks and Net2Edge businesses, CSI assets remaining to be sold include the Services & Support operating segment (JDL Technologies and Ecessa Corporation), which had revenues of $8.8 million in 2020, the Company's headquarters building in Minnetonka, Minnesota, currently listed for $10.0 million, and real estate in Hector, Minnesota, currently listed for $1.2 million. In addition to any cash dividends paid prior to the CSI-Pineapple merger, as previously disclosed, CSI shareholders immediately prior to this merger (i) will receive a Contingent Value Right that will entitle them to 90% of the net proceeds of any legacy CSI assets that are sold within 18 months after the CSI-Pineapple merger and (ii) will have a continuing interest as shareholders in the combined CSI-Pineapple post-merger entity.

**Update on CSI Private Financing**

Consistent with CSI's previously disclosed plans, on April 11, 2021, CSI entered into a non-binding Letter of Intent for debt and equity financing ("Financing"). The Financing is subject to the negotiation and execution of a definitive securities purchase agreement and continuing investor due diligence and would be subject to CSI shareholder approval. CSI expects the Financing would close concurrently with closing of consummation of the CSI-Pineapple merger. Assuming the successful conclusion of Financing, CSI-Pineapple would use the Financing proceeds to refinance the Pineapple existing debt and to provide ongoing working capital, funds for future capital expenditures, and capital for general corporate purposes.

\*\*\*

21.     The Purchase Consideration is unfair because, among other things, the intrinsic value of the Businesses is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

22.     It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

5

23. Section 6.2 of the Purchase Agreement has a "no solicitation" clause that prevents Communication Systems from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

<u>No solicitation</u>.

(a) No Solicitation or Negotiation. Except as set forth in this Section 6.2, until the Effective Time, Seller and its Subsidiaries (including the Acquired Companies) shall not, and Seller shall cause its and their respective directors, officers, members, employees, agents, attorneys, consultants, contractors, accountants, financial advisors and other authorized representatives (collectively, "Representatives") not to, directly or indirectly:

(i) solicit, seek or initiate or knowingly take any action to facilitate or encourage any offers, inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal, or engage, participate in, or knowingly facilitate, any discussions or negotiations regarding, or furnish any nonpublic information to any person in connection with any inquiries, proposals or offers that constitute or could reasonably be expected to lead to, an Acquisition Proposal;

(ii) enter into, continue or otherwise participate or engage in any discussions or negotiations regarding any Acquisition Proposal, or furnish to any Person any non-public information or afford any Person other than Purchaser access to such party's property, books or records (except pursuant to a request by a Government Entity) in connection with any offers, inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal; or

(iii) take any action to make the provisions of any takeover statute inapplicable to any transactions contemplated by an Acquisition Proposal.

Notwithstanding the foregoing or anything to the contrary set forth in this Agreement, but subject to compliance with the other applicable terms of this Section 6.2, prior to receipt of the Seller Shareholder Approval, Seller may (A) furnish non-public information with respect to the Acquired Companies to any Qualified Person (and the Representatives of such Qualified Person), or (B) engage in discussions or negotiations (including solicitation of revised Acquisition Proposals) with any Qualified Person (and the Representatives of such Qualified Person) regarding any such Acquisition Proposal; provided that prior to taking any of the actions contemplated by clauses (A) and (B) above (w) Seller has received a bona fide written unsolicited Acquisition Proposal from a Qualified Person, (x) Seller receives from such Qualified Person an executed confidentiality agreement

on terms not less restrictive than exist in the Confidentiality Agreement and additional provisions that expressly permit such party to comply with this terms of this Section 6.2 (a copy of which shall be provided to Purchaser), (y) Seller has not materially breached this Section 6.2 with respect to such Acquisition Proposal, and (z) the Seller Board has determined, after consultation with outside legal counsel, that the failure to take such actions would reasonably be expected to be inconsistent with the Seller Board's fiduciary duties under applicable Law. Any information made available or provided to a Qualified Person pursuant to this Section 6.2 by or on behalf of Seller shall, substantively concurrently therewith, be made available or provided to Purchaser (unless such information has already been provided to Purchaser).

24. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

25. First, the Proxy omits material information regarding the analyses performed by the Company's financial advisor Northland Securities, Inc ("Northland") in connection with the Proposed Transaction.

26. With respect to Northland's *Select Public Company Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Northland in the analysis.

27. With respect to Northland's *Selected Precedent Transaction Analysis* the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Northland in the analysis.

28. With respect to Northland's *Discounted Cash Flow Analysis*, the Proxy to fails to disclose (i) the projected standalone after-tax unlevered free cash flows for the Businesses for calendar years ending December 31, 2021 through December 31, 2025; (ii) net operating loss carryforwards expected by Communications System's management; (iii) the terminal of the Businesses; (iv) the individual inputs and assumptions underlying the discount rate range of 14.7 % to 17.7% ; and (iv) the individual inputs and assumptions underlying the perpetuity growth of

0.0 % to 0.4 %.

29. Third, the Proxy fails to disclose the terms and values of the proposals, indications of interest, and letters of intent submitted, including, but not limited to from Company A and Company B, during the process leading up to the execution of the Purchase Agreement.

30. Fourth, the Proxy fails to disclose sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

31. The omission of the above-referenced material information renders the Proxy false and misleading.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary

8

in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

37. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

38. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

43. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Purchase Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act,

as well as Rule 14a-9 promulgated thereunder;

  E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 23, 2021

        **MOORE KUEHN, PLLC**
        */s/Justin Kuehn*
        Justin A. Kuehn
        Fletcher W. Moore
        30 Wall Street, 8th floor
        New York, New York 10005
        Tel: (212) 709-8245
        jkuehn@moorekuehn.com
        fmoore@moorekuehn.com
        *Attorneys for Plaintiff*